**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **BLUE SPIKE, LLC**<br><br>***Plaintiff*,**<br><br>**v.**<br><br>**KUDELSKI S.A. (D/B/A KUDELSKI GROUP), KUDELSKI SECURITY HOLDINGS, INC., NAGRA USA, INC., NAGRASTAR LLC, OPENTV, INC., CONAX S.A. & CONAX USA, INC.**<br><br>***Defendants*.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Case 2:16-cv-1191**<br><br>**JURY TRIAL DEMANDED** |

**<u>ORIGNAL COMPLAINT FOR PATENT INFRINGEMENT</u>**

Plaintiff Blue Spike, LLC files this complaint against Kudelski S.A. (d/b/a Kudelski Group), Kudelski Security Holdings, Inc., Nagra USA, Inc., NagraStar LLC, OpenTV, Inc., Conax S.A., and Conax USA, Inc. ("Defendants") alleging ten (10) counts of patent infringement:

1. U.S. Patent 5,889,868, titled "Optimization methods for the insertion, protection, and detection of digital watermarks in digitized data";

2. U.S. Patent 7,770,017, titled "Method and System for Digital Watermarking";

3. U.S. Patent 7,877,609, titled "Optimization methods for the insertion, protection, and detection of digital watermarks in digital data";

4. U.S. Patent 7,913,087, titled "Optimization methods for the insertion, protection, and detection of digital watermarks in digital data";

5. U.S. Patent 7,953,981, titled "Optimization methods for the insertion, protection, and detection of digital watermarks in digital data";

6. U.S. Patent 8,121,343, titled "Optimization Methods for The Insertion, Protection, and Detection of Digital Watermarks in Digitized Data";

7. U.S. Patent 8,161,286, titled "Method and System for Digital Watermarking";

8. U.S. Patent 8,175,330, titled "Optimization methods for the insertion, protection, and detection of digital watermarks in digital data";

9. U.S. Patent 8,225,099 titled "Linear predictive coding implementation of digital watermarks"; and

10. U.S. Patent 8,307,213, titled "Method and System for Digital Watermarking" as follows:

## NATURE OF THE SUIT

1. This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

## PARTIES

2. Plaintiff Blue Spike, LLC is a Texas limited liability company and has its headquarters and principal place of business at 1820 Shiloh Road, Suite 1201-C, Tyler, Texas 75703. Blue Spike, LLC is the assignee of the Patent-in-Suit, and has ownership of all substantial rights in the asserted Patents, including the rights to grant sublicenses, to exclude others from using it, and to sue and obtain damages and other relief for past and future acts of patent infringement.

3. Kudelski S.A. d/b/a Kudelski Group is a Swiss corporation, having its principal place of business at Route De Genéve 22-24, Cheseaux-Sur-Lausanne, Vaud, 1033 Switzerland. Kudelski S.A. can be served with process through its U.S. subsidiaries,

Kudelski Security Holdings, Inc., Nagra USA, Inc., or its officers appearing in the U.S. via personal service.

4. Kudelski Security Holdings, Inc. is a subsidiary of Kudelski. It is a Delaware corporation, having its principal place of business at 2338 W. Royal Palm Road, Suite J, Phoenix, Arizona 85021. Kudelski Security Holdings, Inc. can be served with process through its registered agent, Corporation Service Company, at 2711 Centerville Road, Suite 400, Wilmington, DE 19808, or through its parent's officer appearing in the U.S. via personal service.

5. Nagra USA, Inc. is a subsidiary of Kudelski. It is a New York corporation, having its principal place of business at 841 Apollo Street, Suite 300, El Segundo, California 92045. Nagra USA, Inc. can be served with process through its registered agent, Virginio Trevisan, at that address, or through its parent's officer appearing in the U.S. via personal service.

6. NagraStar LLC is a subsidiary of Kudelski. It is a Colorado company, having its principal place of business at 100 Inverness Terrace East, Englewood, Colorado 80112. NagraStar LLC can be served with process through its registered agent, Corporation Service Company, at 1560 Broadway, Suite 2090, Denver, CO 80202, or through its parent's officer appearing in the U.S. via personal service.

7. OpenTV, Inc. is a subsidiary of Kudelski. It is a Delaware corporation, having its principal place of business at 275 Sacramento Street, 6th Floor, San Francisco, California 94111. OpenTV, Inc. can be served with process through its registered agent, Corporation Service Company, at 2711 Centerville Road, Suite 400, Wilmington, DE 19808, or through its parent's officer appearing in the U.S. via personal service.

8. Conax S.A. is a subsidiary of Kudelski. It is a Norwegian company, having its principal place of business at Storgata 33 B, P.O. Box 425 Sentrum NO-0103, Oslo, Norway. Conax S.A. can be served with process through its U.S. subsidiary, Conax USA, Inc., or through its parent's officer appearing in the U.S. via personal service.

9. Conax USA, Inc. is a subsidiary of Conax S.A. It is a Delaware corporation, having its principal place of business at 7347 South Revere Parkway, Building A, Centennial, Colorado 80112. Conax USA, Inc. can be served with process through its registered agent, Corporation Service Company, at 2711 Centerville Road, Suite 400, Wilmington, DE 19808, or through its parent's officer appearing in the U.S. via personal service.

## JURISDICTION AND VENUE

10. This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §101 *et seq.* The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), and 1367.

11. The Court has personal jurisdiction over Defendants for at least four reasons: (1) Defendants have committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (2) Defendants regularly do business or solicits business in the District and in Texas; (3) Defendants engage in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in the District and in Texas; and (4) Defendants have purposefully established substantial, systematic, and continuous contacts with the District and should reasonably expect to be haled into court here.

12. On information and belief, Defendants monitor, deliver, and/or assist in the delivery of video content to customers residing in the Eastern District of Texas. More specifically, the Accused Products are used to secure video content that is broadcast or otherwise delivered to viewers in the Eastern District of Texas.

13. Thus, the Court's exercise of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice.

14. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)–(c) and 1400(b) because Defendants do business in the State of Texas, have committed acts of infringement in Texas and in the District, a substantial part of the events or omissions giving rise to Blue Spike's injury happened in the District, and Defendants are subject to personal jurisdiction in the District.

## FACTUAL BACKGROUND

15. Protection of intellectual property is a prime concern for creators and publishers of digitized copies of copyrightable works, such as musical recordings, movies, video games, and computer software. Blue Spike founder Scott Moskowitz pioneered—and continues to invent—technology that makes such protection possible.

16. Moskowitz is a senior member of the Institute of Electrical and Electronics Engineers (IEEE), a member of the Association for Computing Machinery, and the International Society for Optics and Photonics (SPIE). As a senior member of the IEEE, Moskowitz has peer-reviewed numerous conference papers and has submitted his own publications.

17. Moskowitz is an inventor of more than 100 patents, including forensic watermarking, signal abstracts, data security, software watermarks, product license keys,

deep packet inspection, license code for authorized software and bandwidth securitization.

18. The National Security Agency (NSA) even took interest in his work after he filed one of his early patent applications. The NSA made the application classified under a "secrecy order" while it investigated his pioneering innovations and their impact on national security.

19. As an industry trailblazer, Moskowitz has been a public figure and an active author on technologies related to protecting and identifying software and multimedia content. A 1995 *New York Times* article—titled "TECHNOLOGY: DIGITAL COMMERCE; 2 plans for watermarks, which can bind proof of authorship to electronic works"—recognized Moskowitz's company as one of two leading software start-ups in this newly created field. *Forbes* also interviewed Moskowitz as an expert for "Cops Versus Robbers in Cyberspace," a September 9, 1996 article about the emergence of digital watermarking and rights-management technology. He has also testified before the Library of Congress regarding the Digital Millennium Copyright Act.

20. Moskowitz has spoken to the RSA Data Security Conference, the International Financial Cryptography Association, Digital Distribution of the Music Industry, and many other organizations about the business opportunities that digital watermarking creates. Moskowitz also authored *So This Is Convergence?*, the first book of its kind about secure digital-content management. This book has been downloaded over a million times online and has sold thousands of copies in Japan, where Shogakukan published it under the name *Denshi Skashi*, literally "electronic watermark." Moskowitz was asked to author the introduction to *Multimedia Security Technologies for Digital Rights*

*Management*, a 2006 book explaining digital-rights management. Moskowitz authored a paper for the 2002 International Symposium on Information Technology, titled "What is Acceptable Quality in the Application of Digital Watermarking: Trade-offs of Security, Robustness and Quality." He also wrote an invited 2003 article titled "Bandwidth as Currency" for the *IEEE Journal*, among other publications.

21. Moskowitz and Blue Spike continue to invent technologies that protect intellectual property from unintended use or unauthorized copying.

## THE ACCUSED PRODUCTS AND SERVICES

22. Defendants design, develop, manufacture and/or provide products and services—including, but not limited to, anyCAST, anyMARK, anyCOMMAND, anyCONNECT, K-trace, Conax Contego, and Conax GO Live—that employ watermarking technology that infringes one or more claims of the Patents-in-Suit (the "Accused Products").

23. Defendants have not obtained a license for any of Blue Spike's patented technologies.

24. Yet Defendants' Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

## COUNT 1:
## INFRINGEMENT OF U.S. PATENT 5,889,868

25. Blue Spike incorporates by reference the allegations in paragraphs 1-24 above.

26. The '868 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

27. Without a license or permission from Blue Spike, Defendants have infringed and continue to infringe on one or more claims of the '868 Patent—directly, contributorily, or

by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

28. Defendants have and now are indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '868 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '868 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '868 Patent. By making, using, importing offering for sale, and/or selling such products, Defendants have injured Blue Spike and are thus liable to Blue Spike for infringement of the '868 Patent under 35 U.S.C. § 271. Those whom Defendants induce to infringe and/or to whose infringement Defendants contribute are the end users of the Accused Products. Defendants had knowledge of the '868 Patent at least as early as the service of this complaint and are thus liable for infringement of one or more claims of the '868 Patent by actively inducing infringement and/or are liable as contributory infringers of one or more claims of the '868 Patent under 35 U.S.C. § 271.

29. Defendants' acts of infringement of the '868 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendants the damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendants' infringement of Blue Spike's exclusive rights under the

‘868 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

30. On information and belief, the infringement of the ‘868 Patent by Defendants has been willful and continues to be willful. Defendants had knowledge of the ‘868 Patent, including but not limited to at least one or more of the following:

a. Through Blue Spike’s lawsuit against Kudelski Group and its subsidiaries for selling and offering to sell NexGuard products and services (E.D. Tex. Case No. 2:16-cv-00421-RWS); and

b. Citations to the Patents-in-Suit in their own patents.

31. On information and belief, Defendants have at least had constructive notice of the ‘868 Patent by operation of law.

**COUNT 2:**

**INFRINGEMENT OF U.S. PATENT 7,770,017**

32. Blue Spike incorporates by reference the allegations in paragraphs 1-31 above.

33. The ‘017 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

34. Without a license or permission from Blue Spike, Defendants have infringed and continue to infringe on one or more claims of the ‘017 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

35. Defendants have and now are indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the ‘017 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other

things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the ‘017 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the ‘017 Patent. By making, using, importing offering for sale, and/or selling such products, Defendants have injured Blue Spike and are thus liable to Blue Spike for infringement of the ‘017 Patent under 35 U.S.C. § 271. Those whom Defendants induce to infringe and/or to whose infringement Defendants contribute are the end users of the Accused Products. Defendants had knowledge of the ‘017 Patent at least as early as the service of this complaint and are thus liable for infringement of one or more claims of the ‘017 Patent by actively inducing infringement and/or are liable as contributory infringers of one or more claims of the ‘017 Patent under 35 U.S.C. § 271.

36. Defendants’ acts of infringement of the ‘017 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendants the damages sustained as a result of Defendants’ wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendants’ infringement of Blue Spike’s exclusive rights under the ‘017 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

37. On information and belief, the infringement of the ‘017 Patent by Defendants has been willful and continues to be willful. Defendants had knowledge of the ‘017 Patent, including but not limited to at least one or more of the following:

a. Through Blue Spike's lawsuit against Kudelski Group and its subsidiaries for selling and offering to sell NexGuard products and services (E.D. Tex. Case No. 2:16-cv-00421-RWS); and

b. Citations to the Patents-in-Suit in their own patents.

38. On information and belief, Defendants have at least had constructive notice of the '017 Patent by operation of law.

**COUNT 3:**
**INFRINGEMENT OF U.S. PATENT 7,877,609**

39. Blue Spike incorporates by reference the allegations in paragraphs 1-38 above.

40. The '609 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

41. Without a license or permission from Blue Spike, Defendants have infringed and continue to infringe on one or more claims of the '609 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

42. Defendants have and now are indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '609 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '609 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '609 Patent. By making, using, importing offering for sale,

and/or selling such products, Defendants have injured Blue Spike and are thus liable to Blue Spike for infringement of the '609 Patent under 35 U.S.C. § 271. Those whom Defendants induce to infringe and/or to whose infringement Defendants contribute are the end users of the Accused Products. Defendants had knowledge of the '609 Patent at least as early as the service of this complaint and are thus liable for infringement of one or more claims of the '609 Patent by actively inducing infringement and/or are liable as contributory infringers of one or more claims of the '609 Patent under 35 U.S.C. § 271.

43. Defendants' acts of infringement of the '609 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendants the damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendants' infringement of Blue Spike's exclusive rights under the '609 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

44. On information and belief, the infringement of the '609 Patent by Defendants has been willful and continues to be willful. Defendants had knowledge of the '609 Patent, including but not limited to at least one or more of the following:

a. Through Blue Spike's lawsuit against Kudelski Group and its subsidiaries for selling and offering to sell NexGuard products and services (E.D. Tex. Case No. 2:16-cv-00421-RWS); and

b. Citations to the Patents-in-Suit in their own patents.

c. Prior knowledge and dealins with Blue Spike, Inc. by a officer of Kudelski.

45. On information and belief, Defendants have at least had constructive notice of the '609 Patent by operation of law.

**COUNT 4:**

**INFRINGEMENT OF U.S. PATENT 7,913,087**

46. Blue Spike incorporates by reference the allegations in paragraphs 1-45 above.

47. The '087 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

48. Without a license or permission from Blue Spike, Defendants have infringed and continue to infringe on one or more claims of the '087 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

49. Defendants have and now are indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '087 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '087 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '087 Patent. By making, using, importing offering for sale, and/or selling such products, Defendants have injured Blue Spike and are thus liable to Blue Spike for infringement of the '087 Patent under 35 U.S.C. § 271. Those whom Defendants induce to infringe and/or to whose infringement Defendants contribute are the end users of the Accused Products. Defendants had knowledge of the '087 Patent at least as early as the service of this complaint and are thus liable for infringement of one

or more claims of the ‘087 Patent by actively inducing infringement and/or are liable as contributory infringers of one or more claims of the ‘087 Patent under 35 U.S.C. § 271.

50. Defendants’ acts of infringement of the ‘087 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendants the damages sustained as a result of Defendants’ wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendants’ infringement of Blue Spike’s exclusive rights under the ‘087 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

51. On information and belief, the infringement of the ‘087 Patent by Defendants has been willful and continues to be willful. Defendants had knowledge of the ‘087 Patent, including but not limited to at least one or more of the following:

a. Through Blue Spike’s lawsuit against Kudelski Group and its subsidiaries for selling and offering to sell NexGuard products and services (E.D. Tex. Case No. 2:16-cv-00421-RWS); and

b. Citations to the Patents-in-Suit in their own patents.

c. Prior knowledge and dealins with Blue Spike, Inc. by a officer of Kudelski.

52. On information and belief, Defendants have at least had constructive notice of the ‘087 Patent by operation of law.

**COUNT 5:**
**INFRINGEMENT OF U.S. PATENT 7,953,981**

53. Blue Spike incorporates by reference the allegations in paragraphs 1-52 above.

54. The ‘981 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

55. Without a license or permission from Blue Spike, Defendants have infringed and continue to infringe on one or more claims of the ‘981 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

56. Defendants have and now are indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the ‘981 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the ‘981 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the ‘981 Patent. By making, using, importing offering for sale, and/or selling such products, Defendants have injured Blue Spike and are thus liable to Blue Spike for infringement of the ‘981 Patent under 35 U.S.C. § 271. Those whom Defendants induce to infringe and/or to whose infringement Defendants contribute are the end users of the Accused Products. Defendants had knowledge of the ‘981 Patent at least as early as the service of this complaint and are thus liable for infringement of one or more claims of the ‘981 Patent by actively inducing infringement and/or are liable as contributory infringers of one or more claims of the ‘981 Patent under 35 U.S.C. § 271.

57. Defendants’ acts of infringement of the ‘981 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendants the damages sustained as a result of Defendants’ wrongful acts in an amount subject to proof at trial pursuant to

35 U.S.C. § 271. Defendants' infringement of Blue Spike's exclusive rights under the '981 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

58. On information and belief, the infringement of the '981 Patent by Defendants has been willful and continues to be willful. Defendants had knowledge of the '981 Patent, including but not limited to at least one or more of the following:

a. Through Blue Spike's lawsuit against Kudelski Group and its subsidiaries for selling and offering to sell NexGuard products and services (E.D. Tex. Case No. 2:16-cv-00421-RWS); and

b. Citations to the Patents-in-Suit in their own patents.

c. Prior knowledge and dealins with Blue Spike, Inc. by a officer of Kudelski.

59. On information and belief, Defendants have at least had constructive notice of the '981 Patent by operation of law.

**COUNT 6:**
**INFRINGEMENT OF U.S. PATENT 8,121,343**

60. Blue Spike incorporates by reference the allegations in paragraphs 1-59 above.

61. The '343 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

62. Without a license or permission from Blue Spike, Defendants have infringed and continue to infringe on one or more claims of the '343 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

63. Defendants have and now are indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the ‘343 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the ‘343 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the ‘343 Patent. By making, using, importing offering for sale, and/or selling such products, Defendants have injured Blue Spike and are thus liable to Blue Spike for infringement of the ‘343 Patent under 35 U.S.C. § 271. Those whom Defendants induce to infringe and/or to whose infringement Defendants contribute are the end users of the Accused Products. Defendants had knowledge of the ‘343 Patent at least as early as the service of this complaint and are thus liable for infringement of one or more claims of the ‘343 Patent by actively inducing infringement and/or are liable as contributory infringers of one or more claims of the ‘343 Patent under 35 U.S.C. § 271.

64. Defendants’ acts of infringement of the ‘343 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendants the damages sustained as a result of Defendants’ wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendants’ infringement of Blue Spike’s exclusive rights under the ‘343 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

65. On information and belief, the infringement of the ‘343 Patent by Defendants has been willful and continues to be willful. Defendants had knowledge of the ‘343 Patent, including but not limited to at least one or more of the following:

a. Through Blue Spike’s lawsuit against Kudelski Group and its subsidiaries for selling and offering to sell NexGuard products and services (E.D. Tex. Case No. 2:16-cv-00421-RWS); and

b. Citations to the Patents-in-Suit in their own patents.

c. Prior knowledge and dealins with Blue Spike, Inc. by a officer of Kudelski.

66. On information and belief, Defendants have at least had constructive notice of the ‘343 Patent by operation of law.

**COUNT 7:**
**INFRINGEMENT OF U.S. PATENT 8,161,286**

67. Blue Spike incorporates by reference the allegations in paragraphs 1-66 above.

68. The ‘286 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

69. Without a license or permission from Blue Spike, Defendants have infringed and continue to infringe on one or more claims of the ‘286 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

70. Defendants have and now are indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the ‘286 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or

authority, products for use in systems that fall within the scope of one or more claims of the ‘286 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the ‘286 Patent. By making, using, importing offering for sale, and/or selling such products, Defendants have injured Blue Spike and are thus liable to Blue Spike for infringement of the ‘286 Patent under 35 U.S.C. § 271. Those whom Defendants induce to infringe and/or to whose infringement Defendants contribute are the end users of the Accused Products. Defendants had knowledge of the ‘286 Patent at least as early as the service of this complaint and are thus liable for infringement of one or more claims of the ‘286 Patent by actively inducing infringement and/or are liable as contributory infringers of one or more claims of the ‘286 Patent under 35 U.S.C. § 271.

71. Defendants’ acts of infringement of the ‘286 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendants the damages sustained as a result of Defendants’ wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendants’ infringement of Blue Spike’s exclusive rights under the ‘286 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

72. On information and belief, the infringement of the ‘286 Patent by Defendants has been willful and continues to be willful. Defendants had knowledge of the ‘286 Patent, including but not limited to at least one or more of the following:

a. Through Blue Spike’s lawsuit against Kudelski Group and its subsidiaries for selling and offering to sell NexGuard products and services (E.D. Tex. Case No. 2:16-cv-00421-RWS); and

b. Citations to the Patents-in-Suit in their own patents.

c. Prior knowledge and dealins with Blue Spike, Inc. by a officer of Kudelski.

73. On information and belief, Defendants have at least had constructive notice of the ‘286 Patent by operation of law.

**COUNT 8:**
**INFRINGEMENT OF U.S. PATENT 8,175,330**

74. Blue Spike incorporates by reference the allegations in paragraphs 1-73 above.

75. The ‘330 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

76. Without a license or permission from Blue Spike, Defendants have infringed and continue to infringe on one or more claims of the ‘330 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

77. Defendants have and now are indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the ‘330 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the ‘330 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the ‘330 Patent. By making, using, importing offering for sale, and/or selling such products, Defendants have injured Blue Spike and are thus liable to Blue Spike for infringement of the ‘330 Patent under 35 U.S.C. § 271. Those whom

Defendants induce to infringe and/or to whose infringement Defendants contribute are the end users of the Accused Products. Defendants had knowledge of the '330 Patent at least as early as the service of this complaint and are thus liable for infringement of one or more claims of the '330 Patent by actively inducing infringement and/or are liable as contributory infringers of one or more claims of the '330 Patent under 35 U.S.C. § 271.

78. Defendants' acts of infringement of the '330 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendants the damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendants' infringement of Blue Spike's exclusive rights under the '330 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

79. On information and belief, the infringement of the '330 Patent by Defendants has been willful and continues to be willful. Defendants had knowledge of the '330 Patent, including but not limited to at least one or more of the following:

a. Through Blue Spike's lawsuit against Kudelski Group and its subsidiaries for selling and offering to sell NexGuard products and services (E.D. Tex. Case No. 2:16-cv-00421-RWS); and

b. Citations to the Patents-in-Suit in their own patents.

c. Prior knowledge and dealins with Blue Spike, Inc. by a officer of Kudelski.

80. On information and belief, Defendants have at least had constructive notice of the '330 Patent by operation of law.

**COUNT 9:**

**INFRINGEMENT OF U.S. PATENT 8,225,099**

81. Blue Spike incorporates by reference the allegations in paragraphs 1-80 above.

82. The ‘099 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

83. Without a license or permission from Blue Spike, Defendants have infringed and continue to infringe on one or more claims of the ‘099 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

84. Defendants have and now are indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the ‘099 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the ‘099 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the ‘099 Patent. By making, using, importing offering for sale, and/or selling such products, Defendants have injured Blue Spike and are thus liable to Blue Spike for infringement of the ‘099 Patent under 35 U.S.C. § 271. Those whom Defendants induce to infringe and/or to whose infringement Defendants contribute are the end users of the Accused Products. Defendants had knowledge of the ‘099 Patent at least as early as the service of this complaint and are thus liable for infringement of one or more claims of the ‘099 Patent by actively inducing infringement and/or are liable as contributory infringers of one or more claims of the ‘099 Patent under 35 U.S.C. § 271.

85. Defendants' acts of infringement of the '099 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendants the damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendants' infringement of Blue Spike's exclusive rights under the '099 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

86. On information and belief, the infringement of the '099 Patent by Defendants has been willful and continues to be willful. Defendants had knowledge of the '099 Patent, including but not limited to at least one or more of the following:

a. Through Blue Spike's lawsuit against Kudelski Group and its subsidiaries for selling and offering to sell NexGuard products and services (E.D. Tex. Case No. 2:16-cv-00421-RWS); and

b. Citations to the Patents-in-Suit in their own patents.

c. Prior knowledge and dealins with Blue Spike, Inc. by a officer of Kudelski.

87. On information and belief, Defendants have at least had constructive notice of the '099 Patent by operation of law.

**COUNT 10:**
**INFRINGEMENT OF U.S. PATENT 8,307,213**

88. Blue Spike incorporates by reference the allegations in paragraphs 1-87 above.

89. The '213 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

90. Without a license or permission from Blue Spike, Defendants have infringed and continue to infringe on one or more claims of the '213 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and

devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

91. Defendants have and now are indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '213 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '213 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '213 Patent. By making, using, importing offering for sale, and/or selling such products, Defendants have injured Blue Spike and are thus liable to Blue Spike for infringement of the '213 Patent under 35 U.S.C. § 271. Those whom Defendants induce to infringe and/or to whose infringement Defendants contribute are the end users of the Accused Products. Defendants had knowledge of the '213 Patent at least as early as the service of this complaint and are thus liable for infringement of one or more claims of the '213 Patent by actively inducing infringement and/or are liable as contributory infringers of one or more claims of the '213 Patent under 35 U.S.C. § 271.

92. Defendants' acts of infringement of the '213 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendants the damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendants' infringement of Blue Spike's exclusive rights under the '213 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

93. On information and belief, the infringement of the '213 Patent by Defendants has been willful and continues to be willful. Defendants had knowledge of the '213 Patent, including but not limited to at least one or more of the following:

a. Through Blue Spike's lawsuit against Kudelski Group and its subsidiaries for selling and offering to sell NexGuard products and services (E.D. Tex. Case No. 2:16-cv-00421-RWS); and

b. Citations to the Patents-in-Suit in their own patents.

c. Prior knowledge and dealins with Blue Spike, Inc. by a officer of Kudelski.

94. On information and belief, Defendants have at least had constructive notice of the '213 Patent by operation of law.

**REQUEST FOR RELIEF**

Blue Spike incorporates each of the allegations in paragraphs 1-94 above and respectfully asks the Court to:

(a) enter a judgment that Defendants have directly infringed, contributorily infringed, and/or induced infringement of one or more claims of each of the Patent-in-Suit;

(b) enter a judgment awarding Blue Spike all damages adequate to compensate it for Defendants' direct infringement of, contributory infringement of, or inducement to infringe, the Patent-in-Suit, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

(c) enter a judgment awarding treble damages pursuant to 35 U.S.C. § 284 for Defendants' willful infringement of one or more of the Patent-in-Suit;

(d) issue a preliminary injunction and thereafter a permanent injunction enjoining and restraining Defendants, their directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors, and assigns, from further acts of infringement, contributory infringement, or inducement of infringement of the Patents-in-Suit;

(e) enter a judgment requiring Defendants to pay the costs of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. § 285, together with prejudgment interest; and

(f) award Blue Spike all other relief that the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Blue Spike demands a jury trial on all issues that may be determined by a jury.

Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
Texas Bar No. 24038912
rgarteiser@ghiplaw.com
Christopher A. Honea
Texas Bar No. 24059967
chonea@ghiplaw.com
**GARTEISER HONEA, PLLC**
119 W Ferguson St.
Tyler, Texas 75702
Tel/Fax: (888) 908-4400

Kirk J. Anderson
California Bar No. 289043
**GARTEISER HONEA, PLLC**
44 North San Pedro Road
San Rafael, California 94903
Telephone: (415) 785-3762
Facsimile: (415) 785-3805

***Counsel for Blue Spike, LLC***

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this date stamped above.

/s/ Randall T. Garteiser
Randall T. Garteiser