IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC<br><br>*Plaintiff*,<br><br>v.<br><br>KUDELSKI S.A. (D/B/A KUDELSKI GROUP), KUDELSKI SECURITY HOLDINGS, INC., NAGRA USA, INC., NAGRASTAR LLC, OPENTV, INC., CONAX S.A. & CONAX USA, INC., NEXGUARD LABS B.V., AND NEXGUARD LABS USA, INC.<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case 2:16-cv-1191<br><br>JURY TRIAL DEMANDED |

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Blue Spike, LLC files this first amended complaint against Kudelski S.A. (d/b/a Kudelski Group), Kudelski Security Holdings, Inc., Nagra USA, Inc., NagraStar LLC, OpenTV, Inc., Conax S.A., Conax USA, Inc., NexGuard Labs B.V., and NexGuard Labs USA, Inc. ("Defendant") alleging fifteen (15) counts of patent infringement:

1. U.S. Patent 5,889,868, titled "Optimization methods for the insertion, protection, and detection of digital watermarks in digitized data" (the '868 Patent);

2. U.S. Patent 7,770,017, titled "Method and System for Digital Watermarking" (the '017 Patent);

3. U.S. Patent 7,877,609, titled "Optimization methods for the insertion, protection, and detection of digital watermarks in digital data" (the '609 Patent);

4. U.S. Patent 7,913,087, titled "Optimization methods for the insertion, protection, and detection of digital watermarks in digital data" (the '087 Patent);

5. U.S. Patent 7,953,981, titled "Optimization methods for the insertion, protection, and detection of digital watermarks in digital data" (the '981 Patent);

6. U.S. Patent 8,121,343, titled "Optimization Methods for The Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '343 Patent);

7. U.S. Patent 8,161,286, titled "Method and System for Digital Watermarking" ('the '286 Patent);

8. U.S. Patent 8,175,330, titled "Optimization methods for the insertion, protection, and detection of digital watermarks in digital data" (the '330 Patent);

9. U.S. Patent 8,225,099 titled "Linear predictive coding implementation of digital watermarks" (the '099 Patent); and

10. U.S. Patent 8,307,213, titled "Method and System for Digital Watermarking" (the '213 Patent);

11. U.S. Patent 7,287,275, titled "Methods, systems and devices for packet watermarking and efficient provisioning of bandwidth" (the '275 Patent);

12. U.S. Patent 8,224,705, titled "Methods, systems and devices for packet watermarking and efficient provisioning of bandwidth" (the '705 Patent);

13. U.S. Patent 8,473,746, titled "Methods, systems and devices for packet watermarking and efficient provisioning of bandwidth" (the '746 Patent);

14. Reissued U.S. Patent RE44,222, titled "Methods, systems and devices for packet watermarking and efficient provisioning of bandwidth" (the '222 Patent); and

15. Reissued U.S. Patent RE44,307, titled "Methods, systems and devices for packet watermarking and efficient provisioning of bandwidth" (the '307 Patent, and collectively the "Patents-in-Suit") as follows:

## NATURE OF THE SUIT

1. This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

## PARTIES

2. Plaintiff Blue Spike, LLC is a Texas limited liability company and has its headquarters and principal place of business at 1820 Shiloh Road, Suite 1201-C, Tyler, Texas 75703. Blue Spike, LLC is the assignee of the Patent-in-Suit, and has ownership of all substantial rights in the asserted Patents, including the rights to grant sublicenses, to exclude others from using it, and to sue and obtain damages and other relief for past and future acts of patent infringement.

3. Kudelski S.A. d/b/a Kudelski Group is a Swiss corporation, having its principal place of business at Route De Genéve 22-24, Cheseaux-Sur-Lausanne, Vaud, 1033 Switzerland. Kudelski S.A. can be served with process through its U.S. subsidiaries, Kudelski Security Holdings, Inc., Nagra USA, Inc., NexGuard Labs USA, Inc., or its officers appearing in the U.S. via personal service.

4. Kudelski Security Holdings, Inc. is a subsidiary of Kudelski. It is a Delaware corporation, having its principal place of business at 2338 W. Royal Palm Road, Suite J, Phoenix, Arizona 85021. Kudelski Security Holdings, Inc. can be served with process through its registered agent, Corporation Service Company, at 2711 Centerville Road, Suite 400, Wilmington, DE 19808, or through its parent's officer appearing in the U.S. via personal service.

5. Nagra USA, Inc. is a subsidiary of Kudelski. It is a New York corporation, having its principal place of business at 841 Apollo Street, Suite 300, El Segundo, California

92045. Nagra USA, Inc. can be served with process through its registered agent, Virginio Trevisan, at that address, or through its parent's officer appearing in the U.S. via personal service.

6. NagraStar LLC is a subsidiary of Kudelski. It is a Colorado company, having its principal place of business at 100 Inverness Terrace East, Englewood, Colorado 80112. NagraStar LLC can be served with process through its registered agent, Corporation Service Company, at 1560 Broadway, Suite 2090, Denver, CO 80202, or through its parent's officer appearing in the U.S. via personal service.

7. OpenTV, Inc. is a subsidiary of Kudelski. It is a Delaware corporation, having its principal place of business at 275 Sacramento Street, 6th Floor, San Francisco, California 94111. OpenTV, Inc. can be served with process through its registered agent, Corporation Service Company, at 2711 Centerville Road, Suite 400, Wilmington, DE 19808, or through its parent's officer appearing in the U.S. via personal service.

8. Conax S.A. is a subsidiary of Kudelski. It is a Norwegian company, having its principal place of business at Storgata 33 B, P.O. Box 425 Sentrum NO-0103, Oslo, Norway. Conax S.A. can be served with process through its U.S. subsidiary, Conax USA, Inc., or through its parent's officer appearing in the U.S. via personal service.

9. Conax USA, Inc. is a subsidiary of Conax S.A. It is a Delaware corporation, having its principal place of business at 7347 South Revere Parkway, Building A, Centennial, Colorado 80112. Conax USA, Inc. can be served with process through its registered agent, Corporation Service Company, at 2711 Centerville Road, Suite 400, Wilmington, DE 19808, or through its parent's officer appearing in the U.S. via personal service.

10. NexGuard Labs B.V. is a subsidiary of Kudelski. *See* Case 2:16-cv-421, Dkt. No. 18. It is a Dutch limited liability company, having its principal place of business at High Tech Campus 9, 5656 AE Eindhoven, The Netherlands. NexGuard Labs Netherlands B.V. can be served with process through its U.S. subsidiary, NexGuard Labs USA, Inc., or through the Texas Secretary of State. NexGuard Labs Netherlands B.V. does business in the State of Texas and in the Eastern District of Texas.

11. NexGuard Labs USA, Inc. is a subsidiary of NexGuard Labs B.V. *See* Case 2:16-cv-421, Dkt. No. 18. It is a Delaware corporation, having its principal place of business at 252 West 38th Street, Suite 1402, New York, NY 10018. NexGuard Labs USA, Inc. can be served with process through its registered agent, VCorp Services, LLC, located at 1013 Centere Road, Suite 403-B, Wilmington, DE 19805. NexGuard Labs USA, Inc. does business in the State of Texas and in the Eastern District of Texas.

12. Kudelski Group is the parent company of the other defendants, which it directly controls.

## JURISDICTION AND VENUE

13. This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §101 *et seq.* The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), and 1367.

14. The Court has personal jurisdiction over Defendant for at least four reasons: (1) Defendant has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (2) Defendant regularly does business or solicits business in the District and in Texas; (3) Defendant engages in other persistent courses of conduct and derives substantial

revenue from products and/or services provided to individuals in the District and in Texas; and (4) Defendant has purposefully established substantial, systematic, and continuous contacts with the District and should reasonably expect to be haled into court here.

15. In particular, Kudelski puts its products into the stream of commerce knowing they will arrive in this forum. *See Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 117 (1987); *Frito-Lay N.A., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 867–68 (E.D. Tex. 2012); *Papa Berg, Inc. v. World Wrestling Ent., Inc.,* 3:12-CV-2406-B, 2013 WL 2090547, at *5 (N.D. Tex. May 15, 2013). Kudelski also directly controls its subsidiaries, which do business in this district. *See,* Ex. A (where subsidiary Nagra's website features "Kudelski Group" prominently under "Nagra," the browser tab is titled "Kudelski Group," and the home page is titled "KUDELSKI GROUP: Welcome to the Kudelski Group website!"); Ex. B (showing Kudelski's corporate headquarters as the shared corporate headquarters for its subsidiaries); Ex. C (coupling "Kudelski" with "NexGuard" on the NexGuard website).

16. On information and belief, Defendant monitors, delivers, and/or assists in the delivery of video content to customers residing in the Eastern District of Texas. More specifically, the Accused Products are used to secure video content that is broadcast or otherwise delivered to viewers in the Eastern District of Texas.

17. Thus, the Court's exercise of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.

18. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)–(c) and 1400(b) because Defendant does business in the State of Texas, has committed acts of

infringement in Texas and in the District, a substantial part of the events or omissions giving rise to Blue Spike's injury happened in the District, and Defendant is subject to personal jurisdiction in the District.

## FACTUAL BACKGROUND

19. Protection of intellectual property is a prime concern for creators and publishers of digitized copies of copyrightable works, such as musical recordings, movies, video games, and computer software. Blue Spike founder Scott Moskowitz pioneered—and continues to invent—technology that makes such protection possible.

20. Moskowitz is a senior member of the Institute of Electrical and Electronics Engineers (IEEE), a member of the Association for Computing Machinery, and the International Society for Optics and Photonics (SPIE). As a senior member of the IEEE, Moskowitz has peer-reviewed numerous conference papers and has submitted his own publications.

21. Moskowitz is an inventor of more than 100 patents, including forensic watermarking, signal abstracts, data security, software watermarks, product license keys, deep packet inspection, license code for authorized software and bandwidth securitization.

22. The National Security Agency (NSA) even took interest in his work after he filed one of his early patent applications. The NSA made the application classified under a "secrecy order" while it investigated his pioneering innovations and their impact on national security.

23. As an industry trailblazer, Moskowitz has been a public figure and an active author on technologies related to protecting and identifying software and multimedia

content. A 1995 *New York Times* article—titled "TECHNOLOGY: DIGITAL COMMERCE; 2 plans for watermarks, which can bind proof of authorship to electronic works"—recognized Moskowitz's company as one of two leading software start-ups in this newly created field. *Forbes* also interviewed Moskowitz as an expert for "Cops Versus Robbers in Cyberspace," a September 9, 1996 article about the emergence of digital watermarking and rights-management technology. He has also testified before the Library of Congress regarding the Digital Millennium Copyright Act.

24. Moskowitz has spoken to the RSA Data Security Conference, the International Financial Cryptography Association, Digital Distribution of the Music Industry, and many other organizations about the business opportunities that digital watermarking creates. Moskowitz also authored *So This Is Convergence?*, the first book of its kind about secure digital-content management. This book has been downloaded over a million times online and has sold thousands of copies in Japan, where Shogakukan published it under the name *Denshi Skashi*, literally "electronic watermark." Moskowitz was asked to author the introduction to *Multimedia Security Technologies for Digital Rights Management*, a 2006 book explaining digital-rights management. Moskowitz authored a paper for the 2002 International Symposium on Information Technology, titled "What is Acceptable Quality in the Application of Digital Watermarking: Trade-offs of Security, Robustness and Quality." He also wrote an invited 2003 article titled "Bandwidth as Currency" for the *IEEE Journal*, among other publications.

25. Moskowitz and Blue Spike continue to invent technologies that protect intellectual property from unintended use or unauthorized copying.

**THE ACCUSED PRODUCTS AND SERVICES**

26. Defendant designs, develops, manufactures and/or provides products and services—including, but not limited to, anyCAST, anyMARK, anyCOMMAND, anyCONNECT, K-trace, Conax Contego, Conax GO Live, NexGuard and Vtrack—that employ watermarking technology that infringes one or more claims of the Patents-in-Suit (the "Accused Products").

27. Defendant has not obtained a license for any of Blue Spike's patented technologies.

28. Yet Defendant's Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

**COUNT 1:**
**INFRINGEMENT OF U.S. PATENT 5,889,868**

29. Blue Spike incorporates by reference the allegations in the paragraphs above.

30. The '868 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

31. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '868 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

32. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '868 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '868 Patent. Defendant uses its products in this forum, including testing, developing, modifying, adapting, and demonstrating its functionality. Defendant also

sells the Accused Products to customers in this district. *See, e.g.*, Case No. 2:16-cv-421, Dkt. No. 46, Declaration of Harrie Tholen ("Tholen Decl.") ¶ 15 (where Defendant NexGuard admits to providing ongoing service to a long-term customer here); Exs. D & E (showing Defendant Conax has integrated its technology with two "Independent Cable Operators" who both provide services in Texas).

33. The Accused Products infringe claims of the '868 Patent, such as Claim 6 which teaches

> A method of pre-analyzing a digital signal for encoding digital watermarks using a digital filter comprising determining what changes in the digital signal will be affected by the digital filter.

Defendant's Accused Products provide "Forensic Watermarking for video and audio content allows the creator or service operator to embed a unique serial number in the content as it is playing" (*a method of pre-analyzing a digital signal for encoding digital* watermarks). *See* Ex. F. "This payload [the watermark] remains completely imperceptible to the consumer while at the same time being resistant to nearly any transformation of the video in size, format or resolution" (*using a digital filter comprising determining what changes in the digital signal will be affected by the digital filter*). *See* Ex. F.

34. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '868 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '868 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are

for use in systems that infringe the ’868 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the ’868 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant’s Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10–cv–175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant NexGuard has admitted to servicing a long-term customer in this forum. *See* Ex. Case No. 2:16-cv-421, Dkt. No. 46, Tholen Decl. ¶ 15. And Conax has integrated its technology with partners who infringe in this forum. *See* Exs. D & E. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the ’868 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the ’868 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the ‘868 Patent under 35 U.S.C. § 271.

35. Defendant’s acts of infringement of the ’868 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant’s wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant’s infringement of Blue Spike’s exclusive rights under the

’868 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

36. On information and belief, the infringement of the ’868 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the ’868 Patent, including but not limited to at least one or more of the following:

a. Through Blue Spike’s lawsuit against Kudelski Group and its subsidiaries for selling and offering to sell NexGuard products and services (E.D. Tex. Case No. 2:16-cv-00421-RWS);

b. Citations to the Patents-in-Suit in their own patents; and

c. Prior knowledge and dealings with Blue Spike, Inc. by an officer of Kudelski.

d. The due diligence and ultimate acquisition of NexGuard Labs and Civolution B.V. during prior litigation involving Blue Spike.

On information and belief, Defendant has had at least had constructive notice of the ’868 Patent by operation of law.

**COUNT 2:**
**INFRINGEMENT OF U.S. PATENT 7,770,017**

37. Blue Spike incorporates by reference the allegations in the paragraphs above.

38. The ’017 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

39. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the ’017 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

40. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the ’017 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the ’017 Patent. Defendant uses its products in this forum, including testing, developing, modifying, adapting, and demonstrating its functionality. Defendant also sells the Accused Products to customers in this district. *See, e.g.*, Case No. 2:16-cv-421, Dkt. No. 46, Declaration of Harrie Tholen (“Tholen Decl.”) ¶ 15 (where Defendant NexGuard admits to providing ongoing service to a long-term customer here); Exs. D & E (showing Defendant Conax has integrated its technology with two “Independent Cable Operators” who both provide services in Texas).

41. The Accused Products infringe claims of the ’017 Patent, such as Claim 13 which teaches

> A system for authorizing content comprising:
> a receiver to receive a potentially watermarked signal;
> a selector to select a portion of the potentially watermarked signal to detect a digital watermark; and,
> a processor to determine the contents of the detected digital watermark with a key comprising at least one access privilege to the contents of the detected digital watermark.

Defendant’s Accused Products employ a “proven means of tracing illicit re-distribution back to a specific account” (*a system for authorizing* content). *See* Ex. F. The Accused Products are integrated into “SmartTVs and Set-Top Boxes” (*a receiver to receive a potentially watermarked signal*). *See* Ex. F. A set-top box also detects the watermark in the content (*a selector to select a portion of the potentially watermarked signal to detect a digital watermark*) and a “watermark detection tool [that] enables you to offer a

complete end-to-end service" (*a processor to determine the contents of the detected digital watermark with a key comprising at least one access privilege to the contents of the detected digital watermark*). *See* Exs. F, K.

42. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '017 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '017 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '017 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '017 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10–cv–175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant NexGuard has admitted to servicing a long-term customer in this forum. *See* Ex. Case No. 2:16-cv-421, Dkt. No. 46, Tholen Decl. ¶ 15. And Conax has integrated its technology with partners who infringe in this forum. *See* Exs. D & E. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '017 Patent at least as early as the service of this complaint. Defendant

has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '017 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '017 Patent under 35 U.S.C. § 271.

43. Defendant's acts of infringement of the '017 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '017 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

44. On information and belief, the infringement of the '017 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '017 Patent, including but not limited to at least one or more of the following:

a. Through Blue Spike's lawsuit against Kudelski Group and its subsidiaries for selling and offering to sell NexGuard products and services (E.D. Tex. Case No. 2:16-cv-00421-RWS);

b. Citations to the Patents-in-Suit in their own patents; and

c. Prior knowledge and dealings with Blue Spike, Inc. by an officer of Kudelski.

d. The due diligence and ultimate acquisition of NexGuard Labs and Civolution B.V. during prior litigation involving Blue Spike.

45. On information and belief, Defendant has had at least had constructive notice of the ’017 Patent by operation of law.

**COUNT 3:**
**INFRINGEMENT OF U.S. PATENT 7,877,609**

46. Blue Spike incorporates by reference the allegations in the paragraphs above.

47. The ’609 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

48. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the ’609 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

49. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the ’609 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the ’609 Patent. Defendant uses its products in this forum, including testing, developing, modifying, adapting, and demonstrating its functionality. Defendant also sells the Accused Products to customers in this district. *See, e.g.*, Case No. 2:16-cv-421, Dkt. No. 46, Declaration of Harrie Tholen (“Tholen Decl.”) ¶ 15 (where Defendant NexGuard admits to providing ongoing service to a long-term customer here); Exs. D & E (showing Defendant Conax has integrated its technology with two “Independent Cable Operators” who both provide services in Texas).

50. The Accused Products infringe claims of the ’609 Patent, such as Claim 14 which teaches

> A method of digital watermark decoding, comprising:
> selecting one of a plurality of codecs; and
> decoding at least one watermark using the selected codec.

Defendant's Accused Products provide "a service for extracting the watermark from suspected pirate content" (*a method of digital watermark decoding*). *See* Ex. F. The Accused Products use "codecs and containers supported by your Rhozet Carbon Coder™ release and license" (*select[] one of a plurality of* codecs). *See* Ex. K. The Accused Products use the codecs to "extract the watermark" (*decod[es] at least one watermark using the selected codec*). *See* Ex. F.

51. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '609 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '609 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '609 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '609 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10–cv–175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant NexGuard has admitted to

servicing a long-term customer in this forum. *See* Ex. Case No. 2:16-cv-421, Dkt. No. 46, Tholen Decl. ¶ 15. And Conax has integrated its technology with partners who infringe in this forum. *See* Exs. D & E. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the ’609 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the ’609 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the ’609 Patent under 35 U.S.C. § 271.

52. Defendant’s acts of infringement of the ’609 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant’s wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant’s infringement of Blue Spike’s exclusive rights under the ‘609 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

53. On information and belief, the infringement of the ’609 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the ’609 Patent, including but not limited to at least one or more of the following:

a. Through Blue Spike’s lawsuit against Kudelski Group and its subsidiaries for selling and offering to sell NexGuard products and services (E.D. Tex. Case No. 2:16-cv-00421-RWS);

b. Citations to the Patents-in-Suit in their own patents; and

c. Prior knowledge and dealings with Blue Spike, Inc. by an officer of Kudelski.

d. The due diligence and ultimate acquisition of NexGuard Labs and Civolution B.V. during prior litigation involving Blue Spike.

54. On information and belief, Defendant has had at least had constructive notice of the ’609 Patent by operation of law.

**COUNT 4:**
**INFRINGEMENT OF U.S. PATENT 7,913,087**

55. Blue Spike incorporates by reference the allegations in the paragraphs above.

56. The ’087 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

57. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the ’087 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

58. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the ’087 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the ’087 Patent. Defendant uses its products in this forum, including testing, developing, modifying, adapting, and demonstrating its functionality. Defendant also sells the Accused Products to customers in this district—*see, e.g.*, Case No. 2:16-cv-421, Dkt. No. 46, Declaration of Harrie Tholen (“Tholen Decl.”) ¶ 15 (where Defendant NexGuard admits to providing ongoing service to a long-term customer here); Exs. D &

E (showing Defendant Conax has integrated its technology with two "Independent Cable Operators" who both provide services in Texas).

59. The Accused Products infringe claims of the '087 Patent, such as Claim 1 which teaches

> A system for detecting at least one digital watermark using at least one digital filter and at least one key comprising:
> a processor for identifying an area of the digital signal that has been affected by the at least one digital filter and a key for detecting the at least one digital watermark; and
> a detector for detecting the at least one digital watermark in the digital signal according to the at least one key and the identified area of the digital signal.

Defendant's Accused Products provide "a service for extracting the watermark from suspected pirate content" (*a system for detecting at least one digital watermark using at least one digital filter and at least one key*). *See* Ex. F; Ex. K ("key sequence also encodes the watermark"). The Accused Products are integrated into "SmartTVs and Set-Top Boxes" which include processors (*a processor for identifying an area of the digital signal that has been affected by the at least one digital filter and a key for detecting the at least one digital watermark*). *See* Ex. F. A set-top box also detects the watermark in the content (*a detector for detecting the at least one digital watermark in the digital signal according to the at least one key and the identified area of the digital signal*). *See* Ex. F.

60. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '087 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one

or more claims of the ’087 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the ’087 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the ’087 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant’s Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10–cv–175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant NexGuard has admitted to servicing a long-term customer in this forum. *See* Ex. Case No. 2:16-cv-421, Dkt. No. 46, Tholen Decl. ¶ 15. And Conax has integrated its technology with partners who infringe in this forum. *See* Exs. D & E. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the ’087 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the ’087 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the ‘087 Patent under 35 U.S.C. § 271.

61. Defendant’s acts of infringement of the ’087 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a

result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '087 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

62. On information and belief, the infringement of the '087 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '087 Patent, including but not limited to at least one or more of the following:

a. Through Blue Spike's lawsuit against Kudelski Group and its subsidiaries for selling and offering to sell NexGuard products and services (E.D. Tex. Case No. 2:16-cv-00421-RWS);

b. Citations to the Patents-in-Suit in their own patents; and

c. Prior knowledge and dealings with Blue Spike, Inc. by an officer of Kudelski.

d. The due diligence and ultimate acquisition of NexGuard Labs and Civolution B.V. during prior litigation involving Blue Spike.

63. On information and belief, Defendant has had at least had constructive notice of the '087 Patent by operation of law.

**COUNT 5:**
**INFRINGEMENT OF U.S. PATENT 7,953,981**

64. Blue Spike incorporates by reference the allegations in the paragraphs above.

65. The '981 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

66. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '981 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and

devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

67. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '981 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '981 Patent. Defendant uses its products in this forum, including testing, developing, modifying, adapting, and demonstrating its functionality. Defendant also sells the Accused Products to customers in this district—*see, e.g.*, Case No. 2:16-cv-421, Dkt. No. 46, Declaration of Harrie Tholen ("Tholen Decl.") ¶ 15 (where Defendant NexGuard admits to providing ongoing service to a long-term customer here); Exs. D & E (showing Defendant Conax has integrated its technology with two "Independent Cable Operators" who both provide services in Texas).

68. The Accused Products infringe claims of the '981 Patent, such as Claim 22 which teaches

> A digital watermarking system, comprising:
> a receiver for receiving a signal;
> an analyzer for determining locations in the signal comprising candidate bits;
> a watermark message generator for generating at least one watermark message wherein a generated watermark message is associated with at least one candidate bit determined in the analyzing step.

Defendant's Accused Products provide "Forensic Watermarking for video and audio content, [which] allows the creator or service operator to embed a unique serial number in the content as it is playing" (*a digital watermarking* system). *S*ee Ex. F. The Accused Products are integrated into "SmartTVs and Set-Top Boxes" (*a receiver for receiving a*

*signal*). *See* Ex. F. The Accused Products employ "a process by which a unique, invisible serial number can be added to audio content" (*a watermark message generator for generating at least one watermark message wherein a generated watermark message is associated with at least one candidate bit determined in the analyzing step*). *See* Ex. F.

69. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '981 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '981 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '981 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '981 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10–cv–175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant NexGuard has admitted to servicing a long-term customer in this forum. *See* Ex. Case No. 2:16-cv-421, Dkt. No. 46, Tholen Decl. ¶ 15. And Conax has integrated its technology with partners who infringe in this forum. *See* Exs. D & E. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products.

Defendant had knowledge of the ’981 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the ’981 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the ‘981 Patent under 35 U.S.C. § 271.

70. Defendant’s acts of infringement of the ’981 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant’s wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant’s infringement of Blue Spike’s exclusive rights under the ‘981 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

71. On information and belief, the infringement of the ’981 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the ’981 Patent, including but not limited to at least one or more of the following:

a. Through Blue Spike’s lawsuit against Kudelski Group and its subsidiaries for selling and offering to sell NexGuard products and services (E.D. Tex. Case No. 2:16-cv-00421-RWS);

b. Citations to the Patents-in-Suit in their own patents; and

c. Prior knowledge and dealings with Blue Spike, Inc. by an officer of Kudelski.

d. The due diligence and ultimate acquisition of NexGuard Labs and Civolution B.V. during prior litigation involving Blue Spike.

72. On information and belief, Defendant has had at least had constructive notice of the ’981 Patent by operation of law.

**COUNT 6:**
**INFRINGEMENT OF U.S. PATENT 8,121,343**

73. Blue Spike incorporates by reference the allegations in the paragraphs above.

74. The ’343 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

75. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the ’343 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

76. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the ’343 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the ’343 Patent. Defendant uses its products in this forum, including testing, developing, modifying, adapting, and demonstrating its functionality. Defendant also sells the Accused Products to customers in this district. *See, e.g.*, Case No. 2:16-cv-421, Dkt. No. 46, Declaration of Harrie Tholen (“Tholen Decl.”) ¶ 15 (where Defendant NexGuard admits to providing ongoing service to a long-term customer here); Exs. D & E (showing Defendant Conax has integrated its technology with two “Independent Cable Operators” who both provide services in Texas).

77. The Accused Products infringe claims of the ’343 Patent, such as Claim 6 which teaches

> A method of decoding a watermark message from a signal, comprising:
> analyzing said signal to identify signal features within said signal that are suitable for embedding one or more bits of a watermark message; and
> decoding a watermark message from said signal using said signal features identified by the analyzing step.

Defendant's Accused Products provide "a service for extracting the watermark from suspected pirate content" (*a method of decoding a watermark message from a* signal). *See* Ex. F. The Accused Products "allow[] the creator or service operator to embed a unique serial number in the content as it is playing" (*analyz[e] said signal to identify signal features within said signal that are suitable for embedding one or more bits of a watermark message*). *See* Ex. F. "This detection process is quick and extremely accurate" (*decoding a watermark message from said signal using said signal features identified by the analyzing step*). *See* Ex. F.

78. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '343 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '343 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '343 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '343 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-

Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10–cv–175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant NexGuard has admitted to servicing a long-term customer in this forum. *See* Ex. Case No. 2:16-cv-421, Dkt. No. 46, Tholen Decl. ¶ 15. And Conax has integrated its technology with partners who infringe in this forum. *See* Exs. D & E. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '343 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '343 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '343 Patent under 35 U.S.C. § 271.

79. Defendant's acts of infringement of the '343 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '343 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

80. On information and belief, the infringement of the ’343 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the ’343 Patent, including but not limited to at least one or more of the following:

a. Through Blue Spike’s lawsuit against Kudelski Group and its subsidiaries for selling and offering to sell NexGuard products and services (E.D. Tex. Case No. 2:16-cv-00421-RWS);

b. Citations to the Patents-in-Suit in their own patents; and

c. Prior knowledge and dealings with Blue Spike, Inc. by an officer of Kudelski.

d. The due diligence and ultimate acquisition of NexGuard Labs and Civolution B.V. during prior litigation involving Blue Spike.

81. On information and belief, Defendant has had at least had constructive notice of the ’343 Patent by operation of law.

**COUNT 7:**
**INFRINGEMENT OF U.S. PATENT 8,161,286**

82. Blue Spike incorporates by reference the allegations in the paragraphs above.

83. The ’286 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

84. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the ’286 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

85. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the ‘286 Patent and/or directing, controlling, and obtaining

benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the ’286 Patent. Defendant uses its products in this forum, including testing, developing, modifying, adapting, and demonstrating its functionality. Defendant also sells the Accused Products to customers in this district. *See, e.g.*, Case No. 2:16-cv-421, Dkt. No. 46, Declaration of Harrie Tholen (“Tholen Decl.”) ¶ 15 (where Defendant NexGuard admits to providing ongoing service to a long-term customer here); Exs. D & E (showing Defendant Conax has integrated its technology with two “Independent Cable Operators” who both provide services in Texas).

86. The Accused Products infringe claims of the ‘286 Patent, such as Claim 1 which teaches

> A method for decoding digital watermarks comprising:
> receiving a content signal encoded with a digital watermark; and
> decoding, said digital watermark from said content signal using a key that comprises information describing where in the content signal said digital watermark is encoded.

Defendant’s Accused Products provide “a service for extracting the watermark from suspected pirate content” (*a method for decoding digital* watermarks). *See* Ex. F. The Accused Products are integrated into “SmartTVs and Set-Top Boxes” (which *receiv[e] a content signal encoded with a digital watermark*). *See* Ex. F. “This detection process is quick and extremely accurate” (*decoding, said digital watermark from said content signal using a key that comprises information describing where in the content signal said digital watermark is encoded*). *See* Ex. F; Ex. K (“key sequence also encodes the watermark”).

87. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the ’286

Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the ’286 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the ’286 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the ’286 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant’s Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10–cv–175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant NexGuard has admitted to servicing a long-term customer in this forum. *See* Ex. Case No. 2:16-cv-421, Dkt. No. 46, Tholen Decl. ¶ 15. And Conax has integrated its technology with partners who infringe in this forum. *See* Exs. D & E. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the ’286 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the ’286 Patent by

actively inducing infringement and/or is liable as contributory infringer of one or more claims of the ’286 Patent under 35 U.S.C. § 271.

88. Defendant’s acts of infringement of the ’286 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant’s wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant’s infringement of Blue Spike’s exclusive rights under the ’286 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

89. On information and belief, the infringement of the ’286 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the ’286 Patent, including but not limited to at least one or more of the following:

a. Through Blue Spike’s lawsuit against Kudelski Group and its subsidiaries for selling and offering to sell NexGuard products and services (E.D. Tex. Case No. 2:16-cv-00421-RWS);

b. Citations to the Patents-in-Suit in their own patents; and

c. Prior knowledge and dealings with Blue Spike, Inc. by an officer of Kudelski.

d. The due diligence and ultimate acquisition of NexGuard Labs and Civolution B.V. during prior litigation involving Blue Spike.

90. On information and belief, Defendant has had at least had constructive notice of the ’286 Patent by operation of law.

**COUNT 8:**
**INFRINGEMENT OF U.S. PATENT 8,175,330**

91. Blue Spike incorporates by reference the allegations in the paragraphs above.

92. The ’330 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

93. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the ’330 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

94. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the ’330 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the ’330 Patent. Defendant uses its products in this forum, including testing, developing, modifying, adapting, and demonstrating its functionality. Defendant also sells the Accused Products to customers in this district. *See, e.g.*, Case No. 2:16-cv-421, Dkt. No. 46, Declaration of Harrie Tholen (“Tholen Decl.”) ¶ 15 (where Defendant NexGuard admits to providing ongoing service to a long-term customer here); Exs. D & E (showing Defendant Conax has integrated its technology with two “Independent Cable Operators” who both provide services in Texas).

95. The Accused Products infringe claims of the ’330 Patent, such as Claim 2 which teaches

> A method for digital watermarking a digital signal, comprising:
>
> identifying, using a processor of a computer, locations within a digital signal which are suitable for embedding one or more bits of a watermark message; and
>
> embedding, using said computer, said watermark message into said digital signal at said locations.

Defendant's Accused Products provide "Forensic Watermarking for video and audio content, [which] allows the creator or service operator to embed a unique serial number in the content as it is playing" (*a method for digital watermarking a digital* signal). *See* Ex. F. The Accused Products employ "a process by which a unique, invisible serial number can be added to audio content" (*identifying, using a processor of a computer, locations within a digital signal which are suitable for embedding one or more bits of a watermark message; and embedding, using said computer, said watermark message into said digital signal at said locations*). *See* Ex. F.

96. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '330 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '330 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '330 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '330 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10–cv–175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant NexGuard has admitted to servicing a long-

term customer in this forum. *See* Ex. Case No. 2:16-cv-421, Dkt. No. 46, Tholen Decl. ¶ 15. And Conax has integrated its technology with partners who infringe in this forum. *See* Exs. D & E. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the ’330 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the ’330 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the ’330 Patent under 35 U.S.C. § 271.

97. Defendant’s acts of infringement of the ’330 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant’s wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant’s infringement of Blue Spike’s exclusive rights under the ’330 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

98. On information and belief, the infringement of the ’330 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the ’330 Patent, including but not limited to at least one or more of the following:

a. Through Blue Spike’s lawsuit against Kudelski Group and its subsidiaries for selling and offering to sell NexGuard products and services (E.D. Tex. Case No. 2:16-cv-00421-RWS);

b. Citations to the Patents-in-Suit in their own patents; and

c. Prior knowledge and dealings with Blue Spike, Inc. by an officer of Kudelski.

d. The due diligence and ultimate acquisition of NexGuard Labs and Civolution B.V. during prior litigation involving Blue Spike.

99. On information and belief, Defendant has had at least had constructive notice of the ’330 Patent by operation of law.

**COUNT 9:**
**INFRINGEMENT OF U.S. PATENT 8,225,099**

100. Blue Spike incorporates by reference the allegations in the paragraphs above.

101. The ’099 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

102. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the ’099 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

103. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the ’099 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the ’099 Patent. Defendant uses its products in this forum, including testing, developing, modifying, adapting, and demonstrating its functionality. Defendant also sells the Accused Products to customers in this district. *See, e.g.*, Case No. 2:16-cv-421, Dkt. No. 46, Declaration of Harrie Tholen (“Tholen Decl.”) ¶ 15 (where Defendant NexGuard admits to providing ongoing service to a long-term customer here); Exs. D &

E (showing Defendant Conax has integrated its technology with two "Independent Cable Operators" who both provide services in Texas).

104. The Accused Products infringe claims of the '099 Patent, such as Claim 2 which teaches

> An article of manufacture comprising a non-transitory machine-readable medium, having thereon stored in non-transitory form instructions adapted to be executed by a processor, which instructions when executed by said processor result in a process of removing carrier signal independent data from a digital sample stream, comprising: receiving a digital sample stream encoded with carrier signal independent data;
> using linear predictive coding calculations to identify signal components of said digital sample stream; and
> extracting carrier signal independent data from said digital sample stream.

Defendant's Accused Products Accused Products provide "a service for extracting the watermark from suspected pirate content" (*a process of removing carrier signal independent data from a digital sample* stream). *See* Ex. F. The Accused Products are integrated into "SmartTVs and Set-Top Boxes" (which *receiv[e] a digital sample stream encoded with carrier signal independent data*). *See* Ex. F. "This detection process is quick and extremely accurate" (*using linear predictive coding calculations to identify signal components of said digital sample stream; and extracting carrier signal independent data from said digital sample* stream). *See* Ex. F.

105. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '099 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling,

without license or authority, products for use in systems that fall within the scope of one or more claims of the ’099 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the ’099 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the ’099 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant’s Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10–cv–175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant NexGuard has admitted to servicing a long-term customer in this forum. *See* Ex. Case No. 2:16-cv-421, Dkt. No. 46, Tholen Decl. ¶ 15. And Conax has integrated its technology with partners who infringe in this forum. *See* Exs. D & E. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the ’099 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the ’099 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the ’099 Patent under 35 U.S.C. § 271.

106. Defendant's acts of infringement of the '099 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '099 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

107. On information and belief, the infringement of the '099 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '099 Patent, including but not limited to at least one or more of the following:

a. Through Blue Spike's lawsuit against Kudelski Group and its subsidiaries for selling and offering to sell NexGuard products and services (E.D. Tex. Case No. 2:16-cv-00421-RWS);

b. Citations to the Patents-in-Suit in their own patents; and

c. Prior knowledge and dealings with Blue Spike, Inc. by an officer of Kudelski.

d. The due diligence and ultimate acquisition of NexGuard Labs and Civolution B.V. during prior litigation involving Blue Spike.

108. On information and belief, Defendant has had at least had constructive notice of the '099 Patent by operation of law.

**COUNT 10:**
**INFRINGEMENT OF U.S. PATENT 8,307,213**

109. Blue Spike incorporates by reference the allegations in the paragraphs above.

110. The '213 Patent is valid, enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

111. Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the ’213 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

112. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the ’213 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the ’213 Patent. Defendant uses its products in this forum, including testing, developing, modifying, adapting, and demonstrating its functionality. Defendant also sells the Accused Products to customers in this district. *See, e.g.*, Case No. 2:16-cv-421, Dkt. No. 46, Declaration of Harrie Tholen (“Tholen Decl.”) ¶ 15 (where Defendant NexGuard admits to providing ongoing service to a long-term customer here); Exs. D & E (showing Defendant Conax has integrated its technology with two “Independent Cable Operators” who both provide services in Texas).

113. The Accused Products infringe claims of the ‘213 Patent, such as Claim 33 which teaches

> A process for watermarking content, the process configured to be executed by a computer, comprising
> receiving content to be watermarked;
> encoding at least one digital watermark using at least one key comprising information describing how the at least one digital watermark is to be encoded in the content; and
> detecting and/or decoding at least one digital watermark from an encoded content signal.

Defendant's Accused Products provide "Forensic Watermarking for video and audio content, [which] allows the creator or service operator to embed a unique serial number in the content as it is playing" (*a process for watermarking content, the process configured to be executed by a computer,* comprising). *See* Ex. F. The Accused Products are integrated into "SmartTVs and Set-Top Boxes" (which *receiv[e] content to be watermarked*). *See* Ex. F. The Accused Products employ "a process by which a unique, invisible serial number can be added to audio content" (*encoding at least one digital watermark using at least one key comprising information describing how the at least one digital watermark is to be encoded in the content*). *See* Ex. F; Ex. L ("key sequence also encodes the watermark"). "This detection process is quick and extremely accurate" (*detecting and/or decoding at least one digital watermark from an encoded content signal*). *See* Ex. F.

114. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '213 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '213 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '213 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '213 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the

use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10–cv–175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant NexGuard has admitted to servicing a long-term customer in this forum. *See* Ex. Case No. 2:16-cv-421, Dkt. No. 46, Tholen Decl. ¶ 15. And Conax has integrated its technology with partners who infringe in this forum. *See* Exs. D & E. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '213 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '213 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '213 Patent under 35 U.S.C. § 271.

115. Defendant's acts of infringement of the '213 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '213 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

116. On information and belief, the infringement of the ’213 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the ’213 Patent, including but not limited to at least one or more of the following:

a. Through Blue Spike’s lawsuit against Kudelski Group and its subsidiaries for selling and offering to sell NexGuard products and services (E.D. Tex. Case No. 2:16-cv-00421-RWS);

b. Citations to the Patents-in-Suit in their own patents; and

c. Prior knowledge and dealings with Blue Spike, Inc. by an officer of Kudelski.

d. The due diligence and ultimate acquisition of NexGuard Labs and Civolution B.V. during prior litigation involving Blue Spike.

117. On information and belief, Defendant has had at least had constructive notice of the ’213 Patent by operation of law.

**COUNT 11:**

**INFRINGEMENT OF U.S. PATENT NO. 7,287,275**

118. Blue Spike incorporates by reference the allegations in paragraphs above.

119. The ’275 Patent is valid, is enforceable, and duly issued by the United States Patent and Trademark Office.

120. Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the ’275 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. §271.

121. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the ’275 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the ’275 Patent. Defendant uses its products in this forum, including testing, developing, modifying, adapting, and demonstrating its functionality. Defendant also sells the Accused Products to customers in this district. *See, e.g.*, Case No. 2:16-cv-421, Dkt. No. 46, Declaration of Harrie Tholen (“Tholen Decl.”), ¶ 15 (where Defendant NexGuard admits to providing ongoing service to a long-term customer here); Exs. D, E (showing Defendant Conax has integrated its technology with two “Independent Cable Operators” who both provide services in Texas).

122. The Accused Products infringe claims of the ’275 Patent such as claim 1 which teaches

> A method for transmitting a stream of data, comprising:
> receiving a stream of data;
> organizing the stream of data into a plurality of packets;
> generating a packet watermark associated with the stream of data wherein the packet watermark enables identification of at least one of the plurality of packets;
> combining the packet watermark with each of the plurality of packets to form watermarked packets; and
> transmitting at least one of the watermarked packets across a network.

Defendant’s Accused Products are integrated in “SmartTVs and Set-Top Boxes” (*a method for transmitting a stream of data, comprising*: *receiving a stream of data;*). *See* Ex. F. Once the Accused Products are integrated, a “watermark is applied as the video is played” (*generating a packet watermark associated with a stream of data wherein the*

*packet watermark enables identification of at least one of the plurality of packets*). *See* Ex. F. The Accused Products "add[] a unique identifier to each stream being watched at home or on a PC or mobile device" (*combining the packet watermark with each of the plurality of packets to form watermarked packets*). *See* Ex. F. "Regardless of whether content is captured from the screen, or through a digital or analog output, the watermark is present in the video" (*transmitting at least one of the watermarked packets across a network*). *See* Ex. F.

123. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '275 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '275 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '275 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '275 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10–cv–175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant NexGuard has admitted to servicing a long-term customer in this forum. *See* Ex. Case No. 2:16-cv-421, Dkt. No. 46, Tholen Decl., ¶ 15.

And Conax has integrated its technology with partners who infringe in this forum. Exs. D, E. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the ’275 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the ’275 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the ’275 Patent under 35 U.S.C. § 271.

124. Defendant’s acts of infringement of the ’275 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant’s wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271. Defendant’s infringement of Blue Spike’s exclusive rights under the ’275 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

125. On information and belief, the infringement of the Patent-in-Suit by Defendant has been willful and continues to be willful. Defendant had knowledge of the Patent-in-Suit, including but not limited to at least one or more of the following:

a. Through Blue Spike’s lawsuit against Kudelski Group and its subsidiaries for selling and offering to sell NexGuard products and services (E.D. Tex. Case No. 2:16-cv-00421-RWS);

b. Citations to the Patents-in-Suit in their own patents; and

c. Prior knowledge and dealings with Blue Spike, Inc. by an officer of Kudelski.

d. The due diligence and ultimate acquisition of NexGuard Labs and Civolution B.V. during prior litigation involving Blue Spike.

126. On information and belief, Defendant has at least had constructive notice of the ’275 Patent by operation of law.

**COUNT 12:**

**INFRINGEMENT OF U.S. PATENT 8,224,705**

127. Blue Spike incorporates by reference the allegations in paragraphs above.

128. The ’705 Patent is valid, is enforceable, and duly issued by the United States Patent and Trademark Office.

129. Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the ’705 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. §271.

130. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the ’705 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the ’705 Patent. Defendant uses its products in this forum, including testing, developing, modifying, adapting, and demonstrating its functionality. Defendant also sells the Accused Products to customers in this district. *See, e.g.*, Case No. 2:16-cv-421, Dkt. No. 46, Declaration of Harrie Tholen (“Tholen Decl.”), ¶ 15 (where Defendant

NexGuard admits to providing ongoing service to a long-term customer here); Exs. D, E (showing Defendant Conax has integrated its technology with two "Independent Cable Operators" who both provide services in Texas).

131. The Accused Products infringe claims of the '705 Patent such as claim 8 which teaches

> An electronic method for selling at least one item and/or service said method comprising:
> establishing a communication link between a vending system and a purchasing system; and
> transmitting a stream of data comprising a plurality of packets using a packet watermark protocol, said transmitting comprising:
> generating a packet watermark associated with the stream of data wherein the packet watermark enables identification of at least one of the plurality of packets; and
> combining the packet watermark with each of the plurality of packets to form watermarked packets; and
> combining the packet watermark with each of the plurality of packets to form watermarked packets;
> wherein the transmitting is for at least one of the following:
> receiving a request to purchase a selected item;
> determining a purchase value for the selected item;
> causing a debit to the purchaser's account in an amount of bandwidth usage which corresponds to the agreed upon purchase value for the selected item; and
> sending an instruction to deliver the selected item.

Defendant's Accused Products allow vendors to "give your subscribers the content they love on any device they own" (*an electronic method for selling at least one item and/or service*). *See* Exs. G, H. Content is delivered via "OTT, home networking and placeshifting delivery of content to set-top boxes and open devices" (*establishing a communication link between a vending system and a purchasing system*; *transmitting a*

*stream of data*). *See* Exs. G, H. "NAGRA PRM can be delivered . . . as part of the anyCAST CONNECT" which provides "hardware based watermarking" (*using a packet watermark protocol; generating a packet watermark associated with the stream of data*; *combining the packet watermark*). *See* Exs. G, H, I.

132. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '705 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '705 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '705 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '705 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10–cv–175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant NexGuard has admitted to servicing a long-term customer in this forum. *See* Ex. Case No. 2:16-cv-421, Dkt. No. 46, Tholen Decl., ¶ 15. And Conax has integrated its technology with partners who infringe in this forum. Exs. D, E. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had

knowledge of the ’705 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the ’705 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the ’705 Patent under 35 U.S.C. § 271.

133. Defendant’s acts of infringement of the ’705 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant’s wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271. Defendant’s infringement of Blue Spike’s exclusive rights under the ’705 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

134. On information and belief, the infringement of the Patent-in-Suit by Defendant has been willful and continues to be willful. Defendant had knowledge of the Patent-in-Suit, including but not limited to at least one or more of the following:

a. Through Blue Spike’s lawsuit against Kudelski Group and its subsidiaries for selling and offering to sell NexGuard products and services (E.D. Tex. Case No. 2:16-cv-00421-RWS);

b. Citations to the Patents-in-Suit in their own patents; and

c. Prior knowledge and dealings with Blue Spike, Inc. by an officer of Kudelski.

d. The due diligence and ultimate acquisition of NexGuard Labs and Civolution B.V. during prior litigation involving Blue Spike.

On information and belief, Defendant has at least had constructive notice of the ’705 Patent by operation of law.

**COUNT 13:**

**INFRINGEMENT OF U.S. PATENT 8,473,746**

135. Blue Spike incorporates by reference the allegations in paragraphs above.

136. The ’746 Patent is valid, is enforceable, and duly issued by the United States Patent and Trademark Office.

137. Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the ’746 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. §271.

138. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the ’746 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the ’746 Patent. Defendant uses its products in this forum, including testing, developing, modifying, adapting, and demonstrating its functionality. Defendant also sells the Accused Products to customers in this district. *See, e.g.*, Case No. 2:16-cv-421, Dkt. No. 46, Declaration of Harrie Tholen (“Tholen Decl.”), ¶ 15 (where Defendant NexGuard admits to providing ongoing service to a long-term customer here); Exs. D, E (showing Defendant Conax has integrated its technology with two “Independent Cable Operators” who both provide services in Texas).

139. The Accused Products infringe claims of the ’746 Patent such as claim

> A method for generating a watermarked packet, comprising:
>
> a processor applying an algorithm to at least (1) a packet watermark and (2) packet content, thereby generating a WID (Watermark Identification);
>
> wherein said packet content is less than all data of a data object;
>
> a processor generating a watermarked packet comprising said packet watermark and at least some of said packet content.

Defendant's Accused Products allow "the creator or service operator to embed a unique serial number in the content as it is playing" (*a method for generating a watermarked packet*). *See* Ex. F. The watermark may be created "on-the-fly" and is akin to "a serial number in the form of an integer" (*applying an algorithm to at least a packet watermark and packet content, thereby generating a WID* (*Watermark Identification*)). *See* Ex. F. "Depending on the technology used, the number of unique payloads available for a single instance of NexGuard ranges into the hundreds of millions" (*a processor generating a watermarked packet comprising said packet watermark and at least some of said packet content*). *See* Ex. F.

140. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '746 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '746 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue

Spike for infringement of the '746 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10–cv–175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant NexGuard has admitted to servicing a long-term customer in this forum. *See* Ex. Case No. 2:16-cv-421, Dkt. No. 46, Tholen Decl., ¶ 15. And Conax has integrated its technology with partners who infringe in this forum. Exs. D, E. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '746 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '746 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '746 Patent under 35 U.S.C. § 271.

141. Defendant's acts of infringement of the '746 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271. Defendant's infringement of Blue Spike's exclusive rights under the '746 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

142. On information and belief, the infringement of the Patent-in-Suit by Defendant has been willful and continues to be willful. Defendant had knowledge of the Patent-in-Suit, including but not limited to at least one or more of the following:

a. Through Blue Spike's lawsuit against Kudelski Group and its subsidiaries for selling and offering to sell NexGuard products and services (E.D. Tex. Case No. 2:16-cv-00421-RWS);

b. Citations to the Patents-in-Suit in their own patents; and

c. Prior knowledge and dealings with Blue Spike, Inc. by an officer of Kudelski.

d. The due diligence and ultimate acquisition of NexGuard Labs and Civolution B.V. during prior litigation involving Blue Spike.

143. On information and belief, Defendant has at least had constructive notice of the '746 Patent by operation of law.

**COUNT 14:**

**INFRINGEMENT OF U.S. PATENT RE-EXAM NO. RE44,222**

144. Blue Spike incorporates by reference the allegations in paragraphs above.

145. The '222 Patent is valid, is enforceable, and duly issued by the United States Patent and Trademark Office.

146. Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '222 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. §271.

147. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the ’222 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the ’222 Patent. Defendant uses its products in this forum, including testing, developing, modifying, adapting, and demonstrating its functionality. Defendant also sells the Accused Products to customers in this district. *See, e.g.*, Case No. 2:16-cv-421, Dkt. No. 46, Declaration of Harrie Tholen (“Tholen Decl.”), ¶ 15 (where Defendant NexGuard admits to providing ongoing service to a long-term customer here); Exs. D, E (showing Defendant Conax has integrated its technology with two “Independent Cable Operators” who both provide services in Texas).

148. The Accused Products infringe claims of the ’222 Patent such as claim 24 which teaches

> A system for secure data transmission, comprising:
> a receiver to receive data;
> a processor to organize the data into a plurality of packets;
> a watermark generator to generate at least a portion of a packet watermark associated with at least one packet of data wherein the packet watermark is associated with verification information; and
> a transmitter to transmit at least one of the plurality of data packets, *and* its associated packet watermark, across a network.

Defendant’s Accused Products are “able to embed a unique watermark in every stream” (*a system for secure data transmission*). *See* Ex. F. The Accused Products can “use NexGuard Streaming technology to watermark server-side” (*a watermark generator to generate at least a portion of a packet watermark*). *See* Ex. J. And the Accused Products may “deliver to customer-owned devices” (*a receiver to receive data*; *a transmitter to*

*transmit at least one of the plurality of data packets, and its associated watermark across a network*). *See* Ex. J.

149. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '222 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '222 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '222 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '222 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10–cv–175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant NexGuard has admitted to servicing a long-term customer in this forum. *See* Ex. Case No. 2:16-cv-421, Dkt. No. 46, Tholen Decl., ¶ 15. And Conax has integrated its technology with partners who infringe in this forum. Exs. D, E. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '222 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made

and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the ’222 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the ’222 Patent under 35 U.S.C. § 271.

150. Defendant’s acts of infringement of the ’222 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant’s wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271. Defendant’s infringement of Blue Spike’s exclusive rights under the ’222 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

151. On information and belief, the infringement of the Patent-in-Suit by Defendant has been willful and continues to be willful. Defendant had knowledge of the Patent-in-Suit, including but not limited to at least one or more of the following:

a. Through Blue Spike’s lawsuit against Kudelski Group and its subsidiaries for selling and offering to sell NexGuard products and services (E.D. Tex. Case No. 2:16-cv-00421-RWS);

b. Citations to the Patents-in-Suit in their own patents; and

c. Prior knowledge and dealings with Blue Spike, Inc. by an officer of Kudelski.

d. The due diligence and ultimate acquisition of NexGuard Labs and Civolution B.V. during prior litigation involving Blue Spike.

152. On information and belief, Defendant has at least had constructive notice of the ’222 Patent by operation of law.

**COUNT 15:**

**INFRINGEMENT OF U.S. PATENT RE-EXAM RE44,307**

153. Blue Spike incorporates by reference the allegations in paragraphs above.

154. The ’307 Patent is valid, is enforceable, and duly issued by the United States Patent and Trademark Office.

155. Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the ’307 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. §271.

156. Defendant has been and now is directly infringing by, among other things, practicing all the steps of the ’307 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the ’307 Patent. Defendant uses its products in this forum, including testing, developing, modifying, adapting, and demonstrating its functionality. Defendant also sells the Accused Products to customers in this district. *See, e.g.*, Case No. 2:16-cv-421, Dkt. No. 46, Declaration of Harrie Tholen (“Tholen Decl.”), ¶ 15 (where Defendant NexGuard admits to providing ongoing service to a long-term customer here); Exs. D, E (showing Defendant Conax has integrated its technology with two “Independent Cable Operators” who both provide services in Texas).

157. The Accused Products infringe claims of the ’307 Patent such as claim 1 which teaches

> A process for provisioning a stream of data, comprising:
> receiving a stream of data;

> organizing the stream of data into a packet flow comprising a plurality of packets;
> generating, using a processor, a packet watermark associated with the packet flow wherein the packet watermark enables discrimination between packet flows;
> combining, using a processor, the packet watermark with each of the plurality of packets to form watermarked packets; and
> provisioning at least one of the watermarked packets across a network.

Defendant's Accused Products are "able to embed a unique watermark in every stream" (*a process for provisioning a stream of data*; *receiving a stream of data*; *organizing the stream of data*; *generating, using a processor, a packet watermark associated with the packet flow*). *See* Ex. F. The Accused Products can "easily scale to hundreds of millions of uniquely watermarked sessions" (*wherein the packet watermark enables discrimination between packet flows*). *See* Ex. J. "A watermarked stream can be sent to any screen: Connected TV, set-top box, tablet, PC/MAC, or handheld device" (*provisioning at least one of the watermarked packets across a network*). *See* Ex. J.

158. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '307 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '307 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '307 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue

Spike for infringement of the ’307 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant’s Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10–cv–175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant NexGuard has admitted to servicing a long-term customer in this forum. *See* Ex. Case No. 2:16-cv-421, Dkt. No. 46, Tholen Decl., ¶ 15. And Conax has integrated its technology with partners who infringe in this forum. Exs. D, E. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the ’307 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the ’307 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the ’307 Patent under 35 U.S.C. § 271.

159. Defendant’s acts of infringement of the ’307 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant’s wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271. Defendant’s infringement of Blue Spike’s exclusive rights under the ’307 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

160. On information and belief, the infringement of the Patent-in-Suit by Defendant has been willful and continues to be willful. Defendant had knowledge of the Patent-in-Suit, including but not limited to at least one or more of the following:

a. Through Blue Spike's lawsuit against Kudelski Group and its subsidiaries for selling and offering to sell NexGuard products and services (E.D. Tex. Case No. 2:16-cv-00421-RWS);

b. Citations to the Patents-in-Suit in their own patents; and

c. Prior knowledge and dealings with Blue Spike, Inc. by an officer of Kudelski.

d. The due diligence and ultimate acquisition of NexGuard Labs and Civolution B.V. during prior litigation involving Blue Spike.

On information and belief, Defendant has at least had constructive notice of the '307 Patent by operation of law.

**REQUEST FOR RELIEF**

Blue Spike incorporates each of the allegations in the paragraphs above and respectfully asks the Court to:

(a) enter a judgment that Defendant has directly infringed, contributorily infringed, and/or induced infringement of one or more claims of each of the Patent-in-Suit;

(b) enter a judgment awarding Blue Spike all damages adequate to compensate it for Defendant's direct infringement of, contributory infringement of, or inducement to infringe, the Patent-in-Suit, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

(c) enter a judgment awarding treble damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement of one or more of the Patent-in-Suit;

(d) issue a preliminary injunction and thereafter a permanent injunction enjoining and restraining Defendant, their directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors, and assigns, from further acts of infringement, contributory infringement, or inducement of infringement of the Patents-in-Suit;

(e) enter a judgment requiring Defendant to pay the costs of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. § 285, together with prejudgment interest; and

(f) award Blue Spike all other relief that the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Blue Spike demands a jury trial on all issues that may be determined by a jury.

Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
Texas Bar No. 24038912
rgarteiser@ghiplaw.com
Christopher A. Honea
Texas Bar No. 24059967
chonea@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W Ferguson St.
Tyler, Texas 75702
Tel/Fax: (888) 908-4400

Kirk J. Anderson
California Bar No. 289043
**GARTEISER HONEA, PLLC**
44 North San Pedro Road
San Rafael, California 94903
Telephone: (415) 785-3762
Facsimile: (415) 785-3805

***Counsel for Blue Spike, LLC***

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this date stamped above.

/s/ Randall T. Garteiser
Randall T. Garteiser